1  TARLOW & BERK PC
2  Barry Tarlow, State Bar No. 36669
   Mark O. Heaney, State Bar No. 50724
3  Mi Kim, State Bar No. 240413
   Attorneys at Law
4  9119 Sunset Boulevard
   Los Angeles, California 90069
5  Telephone: (310) 278-2111

6
   Attorneys for Stephen Yagman
7

8

9                    **UNITED STATES DISTRICT COURT**
10                   **CENTRAL DISTRICT OF CALIFORNIA**
11                           **WESTERN DIVISION**
12

13  UNITED STATES OF AMERICA,     ) CASE NO. CR 06-227(A)-SVW
                                  )
14         Plaintiff,             ) **DEFENDANT'S MEMORANDUM**
                                  ) **OF POINTS AND AUTHORITIES IN**
15         v.                     ) **OPPOSITION TO PROSECUTION'S**
                                  ) ***EX PARTE* APPLICATION FOR**
16  STEPHEN YAGMAN,               ) **PRE-JUDGMENT NON-**
                                  ) **DISSIPATION ORDER**
17         Defendant.             ) **PREVENTING DEFENDANT FROM**
                                  ) **LIQUIDATING AMERIPRISE**
18                                ) **FINANCIAL FUNDS AND IN**
                                  ) **SUPPORT OF DEFENDANT'S**
19                                ) **MOTION TO (1) COMPEL**
                                  ) **AMERIPRISE FINANCIAL TO**
20                                ) **RELEASE FUNDS ASSIGNED TO**
                                  ) **DEFENDANT'S COUNSEL AND (2)**
21                                ) **COMPEL THE PROSECUTION TO**
                                  ) **REMEDY ITS UNAUTHORIZED**
22                                ) **INTERCESSION WITH**
                                  ) **AMERIPRISE FINANCIAL**
23                                ) **PREVENTING THE PAYMENT OF**
                                  ) **LEGAL FEES**
24                                )
                                  ) Hearing: July 23, 2007 at 11:00 a.m.
25                                ) Courtroom of the Hon. Steven V.
                                  ) Wilson
26                                )
27                                )
28                                )

# INTRODUCTION

On July 13, 2007, Stephen Yagman contacted Ameriprise Financial and directed that it liquidate his defined benefit pension plan or 401k account and release the proceeds from this liquidation to him. The intent and purpose of Mr. Yagman's directive was that these funds would be available to: (1) pay for past legal services previously billed that he owed to Mr. Tarlow and the law firm of Tarlow & Berk, PC in *United States v. Yagman,* Case No. CR 06-227(A)-SVW, (2) pay for or reimburse the costs he owed to Mr. Tarlow & the law firm of Tarlow & Berk, PC, and (3) to pay for continuing representation by counsel of his choice, Barry Tarlow in this case. Mr. Yagman was informed by his broker at Ameriprise Financial that he would receive the requested proceeds from the liquidation of his plans within a week of his request. Mr. Yagman never received these requested funds.

On late Friday afternoon, July 20, 2007, the defense learned that: (1) Ameriprise Financial had, at the request of the AUSA Sagar and acting without any lawful authority, previously "frozen" the funds in Mr. Yagman's accounts as well Mr. William Smolek's funds in his own investment account and (2) the prosecution's had filed an *Ex Parte* Application for Pre-Judgment Non-Dissipation Order Preventing Defendant from Liquidating Ameriprise Financial Funds (hereafter "*Ex Parte* Application"). The defense learned about the *Ex Parte* Application when the court's clerk telephoned defense counsel to inform that a hearing had been set on this application for Monday, July 23, 2007 at 11:00 a.m. Subsequent to receiving this call, the defense retrieved a copy of the *Ex Parte* Application from Pacer and learned that the prosecution had also submitted a Declaration of Alka Sagar and exhibits in support of its request to the court *in camera* and under seal. The defense has not yet been provided with a copy of Ms. Sagar's declaration or any of its exhibits.

As will be discussed below, the *Ex Parte* Application should be denied because: (1) the All-Writs Act, 28 U.S.C. § 1651, does not authorize this court restrain any assets prior to sentencing and the entry of a restitution order, (2) a substantial portion of the funds sought to be restrained by the prosecution do not belong to the defendant and thus are "not available for payment" of any restitution order, (3) the prosecution's filing of the *Ex Parte* Application is purposely intended to deprive Mr. Yagman his Sixth Amendment right to the counsel of his choice, and (4) Mr. Yagman as well as third-parties with claims to these funds have been denied due process.

Moreover, because Mr. Yagman has assigned a portion of these funds to defense counsel for payment of past legal services and costs, the defense counsel and not Mr. Yagman is the rightful owner of these assigned funds. Therefore, funds that now belong to Mr. Tarlow's law firm cannot be used for restitution or to pay a fine. Defense counsel is thus entitled to have the court remedy this Sixth Amendment violation by issuing an order compelling Ameriprise Financial to release funds assigned to it and compelling the prosecution to remedy its unauthorized intercession with Ameriprise Financial, which has prevented the payment of Mr. Yagman's legal fees.

## DISCUSSION

**A. The All-Writs Act, 28 U.S.C. § 1651, does not authorize this court to restrain Stephen Yagman from selling, transferring, or otherwise disposing of any assets prior to sentencing and the entry of a restitution order.**

Federal courts are authorized under the All-Writs Act, 28 U.S.C. § 1651, to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). While the language of the Act refers to writs issued in aid of jurisdiction, the Supreme Court has held that the Act empowers district courts to issue orders or injunctions

"necessary or appropriate to effectuate and prevent the frustration of orders it has **previously** issued in its exercise of jurisdiction otherwise obtained." *United States v. New York Tel. Co.,* 434 U.S. 159, 172, (1977) (emphasis added). Thus, even as the authority relied upon by the prosecution recognizes, a restraining order directed against a defendant's assets may only issue if a two-part test is met. *United States v. Abdelhadi*, 327 F.Supp.2d 587, 598 (E.D. Va. 2004). As the *Abdelhadi* court explained:

> A court may enter a restraining order under the All Writs Act only if (i) by doing so, the court will give effect to a previously-issued order and (ii) there is reason to believe that the restraining order is necessary for payment of a fine or restitution.

*Id.* Judge Ellis found that this two-pronged test under the All Writs Act was satisfied because: (1) there were previously-issued sentencing and restitution orders and (2) there was reason to believe that the restraining was necessary because the defendant had absconded prior to sentencing and prior to the entry of the restitution order and his whereabouts were unknown. *United States v. Abdelhadi*, 327 F.Supp.2d at 599-600.

Here, there is no "previously-issued" restitution order which the prosecution seeks to enforce through the All-Writs Act and Mr. Yagman has already assigned a portion of the funds to pay past due legal bills.

**B.    No statute permits the restraint of restitution funds prior to the entry of a restitution order.**

Under the prosecution's theory, if indeed the All-Writs Act confers upon any court in the Ninth Circuit the authority to deprive Mr. Yagman of the ability to be represented by the counsel of his choice by restraining Mr. Yagman's assets prior to sentencing and the entry of a restitution order, the prosecution would have long ago

moved for such an order. It has not because there was and is no statutory basis for doing so.

Indeed, the Ninth Circuit's treatment of the closely-related area involving pre-trial restraint of substitute assets (in anticipation that the forfeitable assets will be available after a judgment of conviction) in the RICO forfeiture context is illustrative. In *United States v. Ripinsky,* 20 F.3d 359 (9th Cir. 1994), the Ninth Circuit considered the issue of whether the prosecution should be allowed to restrain substitute assets prior to conviction[1] based on the authority which permits the government to seize and forfeit substitute assets if the specific forfeitable assets are unavailable. *See* 21 U.S.C. §§ 853(e)(1)(A) and 853(p). The panel held that 21 U.S.C. § 853 does not permit pre-trial restraint of substitute assets because no statute authorizes such a restraint. *United States v. Ripinsky,* 20 F.3d 359, 365 (9th Cir. 1994).

---

[1] The *Ripinsky* Ninth Circuit panel considered the "preliminary" issue of whether Ripinsky's appeals have been rendered moot by a jury verdict, finding Ripinsky guilty on all of the counts with which he was charged. *Untied States v. Ripinsky,* 20 F.3d 359, 362 (9th Cir. 1994). The government argued that the jury verdict rendered Ripinsky's appeal moot because, upon conviction, Ripinsky's assets will be forfeitable pursuant to 18 U.S.C. § 982(a)(1), which authorizes the seizure of property at the time of sentencing. In rejecting the government's argument, the *Ripinski* Ninth Circuit held:

> "We conclude that this claim is not moot. . . In this case, the judgment of conviction has not yet been entered against Ripinsky and will be entered only after sentencing. . . Until the judgment of conviction is entered, the sole legal basis for continuing to restrain Ripinsky's assets [is] the two pretrial restraining orders that are the subject of this appeal. Therefore, until the judgment of conviction is actually entered, the question of whether § 853(e) authorizes the government to restrain substitute assets remains a live controversy."

*Id.* (internal citations omitted).

1    Clearly, the *Ripinsky* Ninth Circuit panel and every other judge who dealt
2 with this issue within the circuit did not permit the restraint of substitute assets
3 under the authority of the All-Writs Act even if the assets would be unavailable
4 when a judgment of conviction and a forfeiture order is entered.

5    Similarly, the All-Writs Act does not permit this court to restrain Mr.
6 Yagman's assets or the assets assigned to Mr. Tarlow for past due legal fees and
7 costs prior to the entry of a restitution order.  Until restitution has been ordered at
8 sentencing pursuant to the Mandatory Victim Restitution Act, 18 U.S.C. §§ 3663-
9 3664, and a finding has been made that Mr. Yagman is in default on a payment of a
10 fine or restitution,[2] the All-Writs Act does not confer upon this court any authority
11 for restraining Mr. Yagman's assets.

12    **C.   The *Ex Parte* Application should be stricken for violating Rule 32.1 of the Federal Rules of Appellate Procedure ("Citing Judicial Dispositions").**

15    In support of its *Ex Parte* Application, the prosecution cites an unpublished
16 October 15, 1993 "Memorandum Order" issued by a district court in the Southern
17 District of New York, *United States v. Ross,* 1993 WL 427415 (S.D.N.Y. October
18 15, 1993).  This citation is an express and intentional violation of Rule 32.1 of the
19 Federal Rules of Appellate Procedure which only permits the citation of

---

[2] *See* 18 U.S.C. § 3613A(a)(1) (a court may "enter a restraining order or injunction. . . or take any other action necessary to obtain compliance with the order of a fine or restitution."); *see also* 18 U.S.C. § 3664(m)(1)(A) which provides:

> "(i) An order of restitution may be enforced by the United States in the manner provided for in subchapter C of chapter 227 and subchapter B of chapter 229 of this title 18 U.S.C.S. §§ 3571 et seq. and 3611 et seq. or (ii) by all other available and reasonable means."

unpublished dispositions and orders issued on or after January 1, 2007.[3] Significantly, Judge Martin's scant (less than one-page) analysis of the All-Writs Act in the unpublished *Ross* Memorandum Order forms the sole basis for the single relevant authority, *United States v. Numisgroup Int'l Corp.,* 159 F.Supp.2d 133, 137-39 (E.D.N.Y. 2001), that the prosecution offers for its contention that prior to sentencing, courts may exercise their powers under the All-Writs Act to restrain a defendant's assets that may be necessary to fulfill a "subsequent order of restitution."  *See Ex Parte* Application at 4-5.  In the six years following the *Numisgroup Int'l Corp.* opinion, no court has ever followed this holding to restrain assets for restitution purposes prior to sentencing and prior to the issuance of an order of restitution.

The prosecution is well-aware of the rules in this circuit prohibiting the citation to unpublished dispositions or orders.  Nonetheless, the prosecution improperly cited the *Ross* Memorandum Order believing that it would influence this court.  Given that the other three cases cited in the *Ex Parte* Application are readily distinguishable on its face, the prosecution appears to have cited the *Ross* case intentionally because it could not support its claims with persuasive case law authority.

The first case cited by the prosecution, *United States v. Lustig,* 555 F.2d 737 (9th Cir. 1977), is distinguishable for two reasons:  (1) this case concerned the restraint of a defendant's assets for bail purposes, that is, "the limited purpose of

---

[3] Rule 32.1(a) of the Federal Rules of Appellate Procedure  ("Citing Judicial Dispositions") provides:

> "A court may not prohibit or restrict the citation of federal judicial opinions, orders, judgments, or other written dispositions that have been; (i) designated as "unpublished," "not for publication," "non-precedential," "not precedent," or the like; and (ii) issued on or after January 1, 2007."

insuring that the defendant did not flee," *id.* at 744, fn 5 and (2) unlike the prosecution's requested order, the restraining order in *Lustig* "would not have prevented payment of an attorney if a request had been made." *Id.* A second case cited by the prosecution, *United States v. Gates,* 777 F.Supp. 1294 (E.D. Va. 1991), is similarly irrelevant. *Gates* is distinguishable not only because it did not concern restitution, but also because the *Gates* defendant had violated a "previous direction of the court" to not dispose of his assets. *Id.* at 1294, fn 2. The last case cited by the prosecution, *United States v. Abdelhadi,* 327 F.Supp.2d 587, 600 (E.D. Va. 2004), demonstrates that under the All-Writs Act, an order to restrain restitution assets may only be issued when there exists a previously-issued restitution order. Judge Ellis granted a restraining order under the All-Writs Act expressly to "effectuate the previously-issued sentencing and restitution orders." *Id.*

Given the prosecution's express and intentional violation of Rule 32.1 of the Federal Rules of Appellate Procedure, the *Ex Parte* Application should be stricken.

**D.  Funds that the prosecution seeks to restrain do not belong to the defendant and thus are not "Available for Payment."**

Even if this court were to entertain the prosecution's *Ex Parte* request for a pre-sentencing restraint on assets "that may be necessary to fulfill a subsequent order of restitution," a significant portion of the funds sought to be restrained (and described below) by the prosecution do not belong to the defendant. These funds, therefore, cannot be the subject of any restraining order directed to Mr. Yagman and are not available for any restitution payment ordered by this court.

**E.  Even assuming arguendo that the All-Writs Act permits the restraint of assets pre-sentencing and prior to the existence of any restitution order, the prosecution falsely claims that Mr. William Smolek's Ameriprise Financial investment account is subject to restraint.**

The prosecution claims that an investment account in the name of William Smolek and bearing his social security number is an account that is "controlled by and apparently belong[s] to the defendant." *Ex Parte* Application at 4. This is an

outrageous and false claim. The prosecution claims Mr. Yagman has a power of attorney. The defense believes a broker at Ameriprise Financial has the authority to decide what trades are made.

Mr. Smolek is the defendant's eighty-seven (87) year old Uncle. His funds are in the account bearing Mr. Smolek's name and social security number. These funds do not belong to Mr. Yagman. They belong to Mr. Smolek. Thus, the prosecution's instigation of restraints placed on these funds, including any "freeze" of the investment activity in this investment account by Ameriprise Financial, constitutes a serious deprivation of both Mr. Smolek's contractual rights with Ameriprise Financial and his Constitutionally-guaranteed Fifth Amendment due process rights. The defense requests that this court enter an order: (1) compelling Ameriprise Financial to immediately release any restraints placed on Mr. Smolek's investment account and (2) compelling the prosecution to remedy its unlawful interference with Mr. Smolek's Ameriprise Financial investment account.

**F.     Even assuming arguendo that the All-Writs Act permits the restraint of assets pre-sentencing and prior to the existence of any restitution order, the portion of the funds belonging to Barry Tarlow & Tarlow & Berk, PC is not subject to restraint.**

Mr. Tarlow and the law firm of Tarlow & Berk, PC are the attorney-assignees with: (1) purchase and/or (2) perfected security interests in a portion of the funds sought to be restrained by the prosecution.

On July 21, 2007, Stephen Yagman irrevocably assigned to Barry Tarlow and the law firm of Tarlow & Berk, P.C. a portion of the funds liquidated from his defined benefit plan account and 401k retirement account held at Ameriprise Financial in the name of Yagman & Yagman & Reichmann. *See* Irrevocable Assignment of Funds at Ameriprise Financial in the amount of $198,366.75 for past legal services attached as Exh. "A" and Irrevocable Assignment of Funds at

1  Ameriprise Financial in the amount of $30,767.28 as payment for or reimbursement
2  of costs attached as Exh. "B."

3       On July 22, 2007, Mr. Tarlow and the law firm of Tarlow & Berk, PC gave
4  notice of these assignments to Ameriprise Financial and demanded the immediate
5  release of these funds.  *See* July 22, 2007 delivery letter with fax confirmation
6  attached as Exh. "C."

7       In addition, on July 22, 2007, Mr. Tarlow and the law firm of Tarlow &
8  Berk, PC perfected their security interest in these funds by filing a UCC Financing
9  Statement with the State of California Secretary of State.  *See* UCC Financing
10 Statement and Initial Filing Confirmation Page attached as Exh. "D."

**G.   The prosecution's filing of its *Ex Parte* Application is purposely intended to deprive Stephen Yagman of the lawyer of his choice.**

     It has long been settled that a defendant in a criminal case has the absolute constitutional right to retain an attorney of his own choosing for appeal as well as for matters not included in his arrangement with current counsel if he has the funds to do so.  *See, e.g., Crooker v. California,* 357 U.S. 433, 439 (1958); *Lee v. United States,* 235 F.2d 219, 221 (D.C. Cir. 1956) ("It is a fundamental principle that an accused be permitted to choose his own counsel, the practice of assigning counsel being reserved for cases where the accused cannot or does not select his own").  In *United States ex rel. Ferenc v. Brierly,* 320 F.Supp. 406 (E.D. Pa. 1970), approximately $700 dollars was seized pursuant to the defendant's arrest, and his motion in state court for return of the funds to retain an attorney was denied.  In granting a writ of habeas corpus, the federal district court held that the right of an accused to retain counsel of his own choosing is a fundamental guarantee of the Sixth Amendment, and that in this case the defendant would have been able to retain counsel of his own choosing if his money had been returned to him.

Rejecting the state's argument that the error was harmless because a competent attorney was appointed, the court noted:

> "We are not here considering the question of his competence. We consider and decide, rather, that relator was entitled to counsel of his choice *because he could afford it,* no matter how well qualified court-appointed counsel may have been."

*United States ex rel. Ferenc v. Brierly, supra,* at 409 (emphasis in original).[4]

In the present case, there is no question that if Stephen Yagman is not provided access to the funds presently being held by Ameriprise Financial, he will be deprived of his absolute Constitutional right to a private attorney of his own choosing. Just as the defendants in *United States ex rel. Ferenc v. Brierly, supra,* 320 F.Supp. 406, Mr. Yagman could afford such individual private counsel of his own choosing but for the wrongful and capricious conduct of the prosecution in requesting Ameriprise Financial to voluntarily comply with its request for a "freeze" on Mr. Yagman's accounts and by filing its *Ex Parte* Application. Clearly, the intent and the effect of the prosecution's filing is to deny the defendant the only funds that he has available to pay for the services of the counsel of his choice. This is particularly so because as the prosecution concedes, "[t]he government is not aware of any other accounts or assets held by defendant." *Ex Parte* Application at P. 4.

The prosecution's actions are intended to, and for example will have an immediate effect on Mr. Yagman's Constitutional right to representation by counsel of his choosing. For example, in the unlikely event that the prosecution prevails on this motion in the trial court, Mr. Yagman desires to proceed, through his counsel, a

---

[4] The *Brierly* court therefore equated the trial court's refusal to return defendant's money with a denial of "a fair opportunity to secure counsel of [his] own choice." *(Powell v. Ala., supra).*

writ to the court of appeals. This representation is excluded from his present agreement with his attorneys. If Mr. Yagman's funds were not frozen or seized, and taken from counsel, his attorneys would be willing to file such a writ on Mr. Yagman's behalf. He would have funds available that could be used to pay for this representation. However, in the face of this type of a financial set-back, if the funds are not released to his lawyers, and since the representation is not within the fee agreement, Mr. Yagman's counsel is not able to litigate this issue on his behalf *pro bono*. Absent the release of these funds, counsel could not represent Mr. Yagman on a writ. Therefore, if the prosecution's *Ex Parte* Application is granted, Mr. Yagman will be forced to proceed with such a writ *in pro per.* This is not what he would do if he had a choice.

Therefore, without the funds, Mr. Yagman has no remedy, short of a dismissal of the prosecution's *ex parte* application, for the damage done to his Sixth Amendment rights by what is unquestionably a deliberate and conscious plan by the prosecution to deprive Mr. Yagman of his Constitutional rights.

**H.    The prosecution's contention that a pre-judgment non-dissipation order is necessary to preserve assets for payment of fines is a sham.**

In the *Ex Parte* Application, the prosecution alleges that Mr. Yagman owes $259,283 to the IRS for the years 1993 to 1997 and alleges that he may owe $1.6 million in restitution. In the same pleading, the prosecution also represents to the court that certain retirement accounts at Ameriprise Financial are the only assets that Mr. Yagman he has. While it is impossible to determine what this court will order as the amount of the restitution, the Sentencing Guidelines limit any fine to what the defendant is able to pay. It provides:

> (a) The court shall impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine.

1 Sentencing Guidelines, 18 U.S.C.S. Appx § 5E1.2.

2,3 Therefore, if restitution is granted in this case, it is unlikely that any significant fine would ever be imposed.

### I. Stephen Yagman, Barry Tarlow, and William Smolek are entitled to a due process hearings.

The prosecution should be held to the same burden in obtaining its *ex parte* restraining order as imposed by the due process requirements governing the issuance of restraining orders in the analogous continuing Criminal Enterprise prosecutions and RICO prosecutions. *See, e.g., United States v. Crozier*, 777 F.2d 1376, 1384 (9th Cir. 1985) (Rule 65 of the Federal Rules of Civil Procedure governs the restraining order provision of the continuing Criminal Enterprise statute, 21 U.S.C. § 848)[5]; *United States v. Veon,* 538 F.Supp. 237, 248-49 (E.D. Cal. 1982) (Federal Rules of Evidence apply to adversary hearings for the purpose of continuing a restraining order under 18 U.S.C. § 848 because 'they apply generally to . . . criminal cases and proceedings. . .'"). Although 18 USC § 1963(3) has been amended to read "the court may receive and consider at a hearing held pursuant to this section evidence and information that would be inadmissible under the Federal Rules of Evidence, by analogy the defense would be entitled to the

---

[5] The *Crozier* Ninth Circuit explained:

> "The forfeiture provisions of the Comprehensive Crime Control Act do not comply with the due process requirements of the Fifth Amendment to the United States Constitution. More specifically, we find 21 U.S.C. § 853(e)'s provisions for restraining orders or injunctions on the filing of an indictment, and the hearing provisions in 21 U.S.C. § 853 (n) for those with third party interests, do not protect the rights of defendants and third parties. In the absence of valid procedural guidelines, we again hold that Rule 65 of the Federal Rules of Civil Procedure governs the restraining order. . ."

*United States v. Crozier,* 777 F.2d 1376, 1384 (9th Cir. 1985).

same type of due process hearing that was conducted before the amendment at (3), *supra.*

Mr. Yagman and defense counsel should be afforded a meaningful notice and an opportunity to be heard, and the right to meaningfully examine the prosecution's evidence in support of its request. None of these due process protections is available on an *ex parte* basis.

**J. Defense counsel is entitled to an order compelling Ameriprise Financial to release funds assigned to it.**

Federal courts have the power to entertain non-statutory motions for the return of property. *See, e.g., United States v. Amore,* 335 F.2d 329 (7th Cir. 1964) (granting the motion of a convicted defendant for a return of money which had been seized pursuant to his arrest for wagering). States courts do as well in a very similar situation involving an assignment to counsel and a jeopardy assessment. *See, e.g., Buker v. Superior Court,* 25 Cal. App. 3d 1085 (4th Dist. 1972); *People v. Vermouth,* 42 Cal. App. 3d 353 (4th Dist. 1974). Here, defense counsel seeks an order compelling Ameriprise Financial to release funds pursuant to the July 21, 2007 assignments by Stephen Yagman to defense counsel and the July 22, 2007 delivery and demand made by upon Ameriprise Financial by defense counsel.

**K. The prosecution should remedy its unauthorized intercession with Ameriprise Financial which has prevented the payment of Mr. Yagman's legal fees.**

Mr. Tarlow and the law firm of Tarlow & Berk, PC are the attorney-assignees with: (1) purchase and/or (2) perfected security interests in a portion of the funds sought to be restrained by the prosecution. Thus, the defense is entitled to an order compelling the prosecution to remedy its unauthorized intercession with Ameriprise Financial, which has prevented the payment of Mr. Yagman's legal fees.

## CONCLUSION

For the foregoing reasons, the defense respectfully requests that this court deny the prosecution's *Ex Parte* Application and grant the relief requested by the defense.

Dated: July 23, 2007          Respectfully submitted,

TARLOW & BERK PC

/s/
Barry Tarlow


/s/
Mark O. Heaney

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28