UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR 06-227(A) SVW |
| | ) | |
| Plaintiff, | ) | ORDER DENYING DEFENDANT'S |
| | ) | MOTION FOR BAIL PENDING APPEAL |
| v. | ) | PURSUANT TO 18 U.S.C. § |
| | ) | 3143(B) [535] |
| STEPHEN YAGMAN, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

Priority ✓
Send
Enter
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only

## I.   INTRODUCTION

On June 22, 2007, Defendant Stephen Yagman ("Defendant") was convicted of all nineteen counts alleged in the First Superseding Indictment ("Indictment").  This conviction included one count of tax evasion, one count of bankruptcy fraud, and seventeen counts of monetary transactions in criminally derived property.

At the close of the Government's case-in-chief, Defendant orally moved for a judgment of acquittal as to Counts Four and Five of the Indictment on June 6, 2007. [Docket No. 385.] The Court denied this motion toward the end of the trial, and subsequently issued a written order on August 17, 2007 explaining its holding. See United States v. Yagman, No. CR-06-227(A), 2007 U.S. Dist. LEXIS 63979 (C.D. Cal. Aug. 17, 2007). On June 15, 2007, Defendant filed a motion for judgment of acquittal as to Counts Nine, Ten, Eleven, Thirteen, Fourteen, Seventeen, and Eighteen. [Docket No. 407.] After receiving further briefing, the motion was granted on August 17, 2007, as to Counts Nine, Ten, Eleven, Thirteen, Fourteen, and Eighteen, but denied as to Count Seventeen. See United States v. Yagman, 502 F. Supp. 2d 1084 (C.D. Cal. 2007). Defendant stands convicted of the remaining thirteen counts of the Indictment.

After the trial was completed on June 22, 2007, Defendant was given a deadline of July 10, 2007 to file a motion for a new trial, or to file an additional motion for judgment of acquittal relating to the remaining charges. No such motion was ever filed.

Defendant's sentencing hearing began early on November 21, 2007. The hearing continued throughout the day on November 26 and November 27, spanning a total of three days in all. At the conclusion of the hearing on November 27, the Court sentenced Defendant to the custody of the Bureau of Prisons to be imprisoned for a term of thirty-six (36) months. Defendant was ordered to self-surrender by January 15, 2008. [Docket No. 541.][1]

---

[1] A large part of the hearing was devoted to technical issues relating to the proper computation under the sentencing guidelines. The Government concluded that the correct offense level was 31, and thus

Despite the fact that the sentencing hearing did not begin until approximately five (5) months after Defendant's June 22, 2007 conviction, Defendant's counsel failed to file any motion for bail pending appeal as of the sentencing's conclusion.  Instead, Defendant's counsel made an oral motion at the end of the proceedings on November 27, 2007.  The oral motion amounted to little more than Defendant's contention that the sheer number of pages of the Court's various orders satisfy the Defendant's burden of demonstrating that debatable issues exist.  The length of the Court's orders reflected the Court's rulings regarding a steady stream of defense motions.  The Court's efforts to be as thorough as possible is no indication that the issues presented debatable questions.  The Court rejected this oral motion without prejudice and allowed briefing.

Defendant's written motion was not filed until eight (8) days later, on December 5, 2007.  The Government's opposition was filed on December 14 and a hearing was held at Defendant's request on December 17, 2007.  At this time, Defendant's counsel requested one week to file a reply due in part (apparently) to the length of the Government's opposition.

The Court has now read and considered all of the pleadings and other documents filed by the parties that relate to Defendant's

---

the sentencing range should be 108 to 135 months. [Docket No. 482.] Defendant's sentencing memorandum offered multiple methods of calculating the offense level. [Docket No. 481.]  Defendant's most favorable guideline calculation was 18, when Count Two was grouped together with the money laundering counts. [Docket No. 481 at 19:11-16.] But as noted by Defendant, Section 3D1.4(c) would require a one point upward adjustment in light of Count One.  This would lead to a total calculation of 19, and a range of 30-37 months.  The Court, as discussed at the sentencing hearing, ultimately concluded that the proper sentencing range was 63-78 months.

motion.  The Court has reviewed its orders under the standard set forth under 18 U.S.C. § 3143(b) and is satisfied that none of the issues, whether viewed separately or in combination, meet this standard.  This is especially true with regard to Counts One (tax evasion), Three through Eight, Twelve, Fifteen through Seventeen, and Nineteen (the "money laundering" counts for which Defendant stands convicted).  For the reasons discussed below, Defendant's motion for bail pending appeal is DENIED.

## II.  LEGAL STANDARD

Under 18 U.S.C. § 3143, a defendant shall be incarcerated pending appeal unless the court finds:

> (1) by clear and convincing evidence that the defendant is not likely to flee or pose a danger to the safety of any other person or the community if released;
>
> (2) the appeal is not taken for the purpose of delay;
>
> (3) the appeal raises a substantial question of law or fact; and
>
> (4) if the substantial question is determined favorably to the defendant on appeal, that decision is likely to result in reversal, an order for a new trial, or a sentence that does not include a term of imprisonment, on all counts on which imprisonment has been imposed.

United States v. Mett, 41 F.3d 1281, 1282 n.3 (9th Cir. 1994) (citing 18 U.S.C. § 3143(b); see also Morison v. United States, 486 U.S. 1306 (1987) (Chief Justice Rehnquist, acting as a Circuit Justice, denying defendant's application for bail pending resolution of certiorari petition because defendant had not shown a likelihood of reversal on all counts on which imprisonment was imposed).  A "substantial

4

1  question" is one that is "fairly debatable" or "fairly doubtful,"

2  thereby raising an issue "of more substance than would be necessary to

3  a finding that it was not frivolous." United States v. Handy, 761

4  F.2d 1279, 1283 (9th Cir. 1985). The moving party has the burden of

5  establishing these elements. United States v. Montoya, 908 F.2d 450,

6  451 (9th Cir. 1990). Without evaluating the first two factors, the

7  Court holds that Defendant has failed to satisfy his burden with

8  regard to the third and fourth factors.[2]

9

10 **III. ANALYSIS**

11      Defendant has raised many issues that he claims create a

12 "substantial issue" for appeal as to all counts. However, the mere

13 fact that Defendant has listed a large number of matters in his motion

14 does not mean that his burden has been met. Similarly, it is

15 irrelevant to this inquiry that the Court chose to explain in depth

16 its rationale for a number of its orders. Defendant's arguments

17 should also be construed in the context of what amounts to the

18 overwhelming evidence of his guilt at trial.

19      The essence of the Indictment was Defendant's secreting of assets

20 and the transfer of assets to nominees in order to avoid the payment

21 of taxes (Count One). In addition, Defendant devised a bankruptcy

22 scheme to defraud the IRS and other creditors (Count Two). The money

23 laundering counts (Counts Three through Eight, Twelve, Fifteen through

24 Seventeen, and Nineteen), were based on deposits and withdrawals made

25

26 ──────────────

27 [2] The Defendant's reply brief devotes many pages to arguing that the
Government has misconstrued the Defendant's burden. Whatever the
merits of this argument, the Court has always articulated the correct

28 standard both in Court and in this order.

1 | subsequent to Defendant's filing of a false bankruptcy petition.   The
2 | predicate act for the money laundering offenses was 18 U.S.C. § 152,
3 | not Section 157 - the crime for which Defendant was convicted in Count
4 | Two.[3]

5 |    A.   Right to Present Evidence Supporting Theory of the Defense
6 |       Defendant argues that he was denied the right to present evidence
7 | that would have shown that he was "framed," as well as a related jury
8 | instruction.   (Def. Brief at 7-9.)   In a footnote, Defendant
9 | summarizes his "framing" defense.   (Id. at 8 n.7.)

10 |       The Court has previously issued two orders relating to this
11 | subject.   [Dockets Nos. 338, 475.]   In these orders, and at trial and
12 | elsewhere, the Court consistently explained that Defendant had every
13 | right to present evidence that would support any proper defense (e.g.,
14 | that he was "framed").   But one cannot introduce evidence as
15 | supportive of a framing defense unless it rationally supports this
16 | conclusion.[4]   At trial, the Court carefully considered several
17 | detailed offers of proof made by Defendant's counsel.   (RT 6/14/07:
18 | 231-241 (sealed and in camera); RT 6/15/07: 81-86 (rough transcript))
19 | It was plainly apparent that none of the offers included any plausible
20 | suggestion that Defendant had been framed.   In effect the Defendant,
21 | knowing that vindictive prosecution is not a jury question, see infra
22 | Part III.B, improperly re-framed the issue as "framing" in order to

---

[3] For a summary of the evidence at trial in support of these charges,
see Government's Opposition to Defendant's Motion for Bail Pending
Appeal at pages 6-23.

[4] In this regard, the Court is cognizant that the defense is entitled
to a theory of defense instruction even if the evidence is weak or of
doubtful credibility.   Notwithstanding the above, the theory still
must be legally sound and find some basis in the factual record.

1    circumvent Federal Rule of Criminal Procedure 12(b)(3).  All of the

2    evidence that Defendant sought to introduce, in actuality, related

3    exclusively to his contention that he has been vindictively

4    prosecuted.

5        Finally, Defendant argues that the Government improperly

6    restructured its case as a result of this Court's rulings, by reducing

7    the role of Government witnesses in the trial, in order to prevent

8    Defendant from presenting his case.  This argument is offered without

9    any legal support and is particularly frivolous.  The Court knows of

10   no rule that would allow Defendant to direct which witnesses the

11   Government must call at trial.

12       Furthermore, the Government's case was not heavily dependent on

13   Government witnesses.  The Government witnesses included Kerrin

14   Conrad-Hoy and James Clerf.  These were IRS revenue agents who were

15   involved in efforts to recover taxes owed by Defendant personally, and

16   taxes owed by the law corporation.  They essentially testified to

17   their efforts in serving notices of tax liens and executing levies on

18   bank accounts.  David West was an IRS revenue agent who summarized a

19   large volume of bank records at trial.  Luis Tejada provided the jury

20   with background relating to tax collection procedures.  Charles

21   Mullaly, an IRS special agent and the case agent at trial, was called

22   to the stand for the limited purpose of authenticating certain

23   handwriting samples.  Bonnie Beal was a handwriting expert from the

24   U.S. Postal Inspection Service.  See infra Part III.L.

25       The evidence at trial largely consisted of numerous documents

26   (court, business, and banking records), and the inculpatory inferences

27   that were drawn from them.  After the Government rested, the Defendant

28   testified and attempted to offer innocent explanations for the

1  documentary evidence.  The defense also called a number of witnesses

2  for the purpose of supporting Defendant's testimony.  The jury clearly

3  rejected Defendant's testimony.

4      The Court, both in written orders and at other times, reminded

5  the defense that although prosecutorial vindictiveness was a Court

6  question, the defense could cross-examine Government witnesses as to

7  bias or motive, which could include evidence that the witnesses

8  desired to prosecute the Defendant for impermissible reasons or some

9  other type of bias.  The defense made only a passing effort at cross-

10 examining one Government witness (Ms. Conrad-Hoy) regarding motive or

11 bias.  During this examination, defense counsel conceded to the Court

12 that it was not for the purpose of impeaching her credibility.  No

13 such examination was attempted with any other Government witness.

14 Even at final argument, the defense did not argue that the Government

15 witnesses were not credible due to their bias or motive.

16     In order to support the defense that he was framed, Defendant

17 would have to show that the Government or others orchestrated a plot

18 to make it appear that an innocent person had committed a crime.  See,

19 e.g., United States v. Vole, 435 F.2d 774 (7th Cir. 1970).  Defendant

20 never contended that the Government created or concocted evidence (as

21 described above, the evidence was largely in the form of indisputable

22 documentary evidence) or that witnesses were instructed to lie in

23 order to support the Government's case.  The alleged lies that the

24 defense sought to introduce at trial did not relate to his guilt or

25 innocence, but rather were a thinly disguised effort to show that some

26 Government witnesses violated internal regulations during the

27 investigation or lied about their reasons for

28 investigating/prosecuting Defendant.  This clearly is part of the

8

1   vindictive prosecution argument no matter its label.  There was simply
2   not a scintilla of evidence in the offers of proof to support the
3   theory that Defendant had been framed.

4        B.    Vindictive Prosecution Discovery and Evidentiary Hearing
5        Defendant argues that the Court's denial of Defendant's motion
6   for discovery and an evidentiary hearing on the issue of vindictive
7   prosecution raises a substantial question.  The Court has addressed
8   this issue in a prior order.  [Docket No. 290.]  In many ways
9   Defendant's vindictive prosecution claim is similar to a selective
10  prosecution claim (e.g., that Defendant was "singled" out for
11  "publicity" purposes).  Defendant never filed a motion, however, on
12  the basis of selective prosecution.

13       The Ninth Circuit has suggested that a prosecutor's charging
14  decision could be the basis of a vindictive prosecution claim.[5]
15  "Where a defendant claims that the filing of an initial indictment
16  constituted vindictive prosecution, 'the defendant must show
17  vindictiveness on the part of those who made the charging decision.'"
18  United States v. Edmonds, 103 F.3d 822, 826 (9th Cir. 1996) (quoting
19  United States v. McWilliams, 730 F.2d 1218, 1221 (9th Cir. 1984)); see
20  also United States v. Gomez-Lopez, 62 F.3d 304, 306 (9th Cir. 1995)
21  (quoting United States v. DeTar, 832 F.2d 1110, 1112 (9th Cir. 1987))
22  ("[T]here must be 'vindictiveness on the part of those who made the

23

24  [5] There are very few cases centering on this variety of a vindictive
25  prosecution claim.  Most arguments in support of vindictive
    prosecution involve the filing of additional charges after the
26  Defendant has exercised some constitutional right such as rejection of
    a plea bargain or appealing a conviction.  See United States v.
27  Rooney, 866 F.2d 28, 33 (2d Cir. 1989) ("Prosecutorial vindictiveness
    claims are for all practical purposes limited to charges added after a
28  trial . . . .").

1   charging decision.'"). However, a Defendant's standard in this regard
2   is particularly stringent.  "[W]here a defendant contends that a
3   prosecutor made a charging decision in violation of the Constitution,
4   the defendant's 'standard [of proof] is a demanding one.'"  Nunes v.
5   Ramirez-Palmer, 485 F.3d 432, 441 (9th Cir. 2007) (quoting United
6   States v. Armstrong, 517 U.S. 456, 463 (1996)).  The Defendant must
7   have "some evidence tending to show the existence of the essential
8   elements of the defense" to obtain additional discovery.  Armstrong,
9   517 U.S. at 468.

10      The essence of the motion was Defendant's belief that he had been
11   targeted because of lawsuits he brought against law enforcement
12   agencies.  Although the Court believed that there was no evidence
13   beyond speculation showing that there was any vindictiveness on the
14   part of those who made the charging decision, the Court nonetheless
15   ordered certain discovery.  In that regard, the Court ordered that
16   significant portions of the IRS file be turned over to the defense.
17   These files traced the origins of the investigation.  The Court went
18   further and allowed a several-day-long cross-examination of Special
19   Agent Peter Alvarado of the IRS, then the lead agent.  Nothing was
20   developed during this hearing that supported the defense's theory.
21   Equally important, even if there was some evidence that Defendant was
22   investigated because of the nature of his law practice (which there
23   was not), the defense would have to show that the Government would not
24   have pursued this case except for the exercise of a constitutional
25   right.  As the Court's detailed order describes, the initial evidence
26   obtained by investigators was the type of evidence the IRS pursues
27   and, furthermore, the evidence ultimately gathered in the course of
28   the investigation overwhelmingly supported the charges.

1  ///

2      C.   Missing Witness Instruction

3      Defendant argues that he was entitled to a missing witness

4  instruction, or at least a missing witness argument as to Michael

5  Colello.  The Court denied both requests at trial.  After the

6  conclusion of the trial, the Court issued a written order explaining

7  its decision.  [Docket No. 471.]

8      Defendant's request for a missing witness instruction was

9  incorrect.  This instruction cannot be given unless the witness is

10  "peculiarly" in the control of the Government and his testimony is

11  likely to be supportive of Defendant's case.  There was never any

12  question that Colello's testimony would have favored the Government,

13  and Defendant never argued to the contrary.

14      Second, Defendant's request for a missing witness argument does

15  not create a substantial issue for appeal.  As discussed in this

16  Court's prior order, Defendant's request is little different

17  from that rejected by the First Circuit in United States v. Spinosa,

18  982 F.2d 620, 633 (1st Cir. 1992), where it was held that:

19      [Defendant]'s tactics with regard to [the witness] smack of

20      gamesmanship.  He had contact with [the witness] and yet he made

21      no effort to subpoena [the witness] to testify at trial, and

22      offers no explanation for his failure to do so.  It is apparent

23      that [Defendant] sought the dual benefit of avoiding [the

24      witness]'s potentially harmful testimony at trial, while at the

25      same time obtaining the advantage of a negative inference drawn

26      by the jury about the government's failure to produce [the

27      witness] as a witness.  While this may make for clever trial

28

1        tactics, the trial court was under no obligation to grant the

2        motion for a "missing witness" instruction.

3  Given the deferential standard of review, and the nature of the facts

4  in this case, the issue is not a "fairly debatable" one on appeal.

5  Furthermore, Colello's testimony would have only applied to: (1) one

6  of the 33 affirmative acts of evasion for Count One; (2) one of the

7  several means by which the bankruptcy fraud scheme was accomplished in

8  Count Two (though not even one of the three acts of execution); and

9  (3) to Counts Four and Five (money laundering).

10

11      D.   Motion to Disqualify the USAO

12     Defendant claims that the Court's denial of his motion to

13  disqualify the entire USAO for the Central District raises a

14  substantial issue on appeal. As discussed in the Court's order,

15  [Docket No. 58], however, the Court is clearly precluded from

16  vicariously disqualifying an entire USAO based on the actions of a

17  limited number of AUSA's. See, e.g., United States v. Lorenzo, 995

18  F.2d 1448, 1453 (9th Cir. 1993); United States v. Whittaker, 268 F.3d

19  185 (3d Cir. 2001); United States v. Vlahos, 33 F.3d 758 (7th Cir.

20  1994); United States v. Caggiano, 660 F.2d 184, 191 (6th Cir. 1981);

21  United States v. Bolden, 353 F.3d 870, 878-79 (10th Cir. 2003); Matter

22  of Grand Jury Investigation of Targets, 918 F. Supp. 1374, 1380 (S.D.

23  Cal. 1996); Crocker v. Durkin, 159 F. Supp. 2d 1258, 1284-85 (D. Kan.

24  2001); Bullock v. Carver, 910 F. Supp 551, 559 (D. Utah 1995); United

25  States v. Judge, 625 F. Supp. 901, 902 (D. Haw. 1986); United States

26  v. Hubbard, 493 F. Supp. 206, 208 (D.D.C. 1979); People v. McPartland,

27  198 Cal. App. 3d 569, 574 (1988); People v. Municipal Court, 98 Cal.

28  App. 3d 690 (1979); People ex rel Younger v. Superior Court (Rabaca),

86 Cal. App. 3d 180 (1978); <u>In re Charles Willie L</u>., 63 Cal. App. 3d 760, 765 (1976). Accordingly, Defendant has failed to meet his burden of demonstrating a substantial issue for appeal based on the denial of the disqualification motion.

    E.   <u>Motion to Dismiss the Indictment Based on the Court's</u>
        <u>Supervisory Powers</u>

Defendant contends that the Court's denial of his motion to dismiss the indictment based on its supervisory powers raises a substantial issue for appeal. As noted in the Court's order, [Docket No. 336], "[b]efore [the court] may invoke [its supervisory] power, a court must first find that the defendant is actually prejudiced by the misconduct. Absent such prejudice-that is, absent 'grave doubt that the decision to indict was free from the substantial influence of [the misconduct]'-a dismissal is not warranted." <u>United States v. Isgro</u>, 974 F.2d 1091, 1094 (9th Cir. 1992) (quoting <u>Bank of Nova Scotia v. United States</u>, 487 U.S. 250, 256 (1988)); <u>see also</u> <u>Isgro</u>, 974 F.2d at 1097 (quoting <u>United States v. Chanen</u>, 549 F.2d 1306, 1313 (9th Cir. 1977)) ("Dismissal of an indictment with prejudice is the most severe sanction possible. Such dismissal exercised under the guise of 'supervisory power' is impermissible absent 'a clear basis in fact and law for doing so.'"). Not only were none of the grounds for exercising the Court's supervisory powers satisfied, but the Defendant failed to articulate any theory of how he was prejudiced by the alleged misconduct except for the highly speculative argument that DOJ-Tax would not have approved the USAO's grand jury request. [Docket No. 225.] As detailed in the order, however, IRS investigators uncovered abundant badges of fraud, and thus "Defendant's argument that DOJ-Tax would not have approved an initiation request is not

1  supportable." <u>Id.</u> Accordingly, Defendant failed to meet his burden
2  of demonstrating that the Court's denial of his motion to dismiss
3  based on the Court's supervisory powers raises a substantial issue for
4  appeal.

5      F.   <u>Denial of Motion of Acquittal as to Counts Four and Five</u>

6      Defendant made an oral motion for judgment of acquittal on June
7  6, 2007, at the close of the Government's case-in-chief.   The Court
8  later denied this motion, and a written order was issued on August 17,
9  2007. [Docket No. 472.] As discussed in that order, the legislative
10  history of 18 U.S.C. § 1957(f)(1) clarifies that the "'attorneys' fees
11  exemption" only applies where a transaction is essential to an
12  individual's exercise of Sixth Amendment rights.   The transactions
13  that form the basis of Counts Four and Five bear no rational
14  relationship to Defendant's, or Colello's, Sixth Amendment rights.
15  These transactions were derived from Defendant's concealment and false
16  oaths in violation of 18 U.S.C. § 152.   Defendant's rejected motion
17  does not represent a substantial issue for appeal, nor could it alone
18  result in a reversal for all counts on which he has been sentenced to
19  prison.

20      G.   <u>Denial of Motion for Mistrial and Curative Instruction</u>

21      Defendant asserts that AUSA Sagar accused him of being an
22  anarchist, "as part of the prosecution's trash, grab, and destroy
23  strategy."   (Def. Brief at 13.)   Defendant argued that a mistrial
24  should have been granted, or in the alternative, a curative
25  instruction.   However, Defendant's experienced counsel did not even
26  object to the question at trial.   The trial record reflects as
27  follows:

28      Q:   And, Mr. Yagman, isn't it true that the reason you

14

1      don't pay your taxes is because you don't believe

2      you have to obey the law?

3  A:  Absolutely not.

4  **Q:  Would you describe yourself as an anarchist?**

5  **A:  I have anarchical tendencies sometimes, but I**

6      **control them.**

7  Q:  Mr. Yagman, on March 12, of this year, didn't you

8      spray paint the letter A with a circle around it

9      on the fence adjoining your neighbor's property?

10     A: I --

11     Mr. Tarlow: Objection, Your Honor. Neighbor

12     disputes don't seem to have anything to do with this

13     case.

14     The Court: Sustained.

15  BY MS. SAGAR

16  Q:  Mr. Yagman, isn't this, the A with the circle around it, a

17     symbol of anarchy?

18  MR. TARLOW: Objection, Your Honor, to whatever his politics might

19  happen to be.

20  THE COURT: Sustained.

21 (RT 6/14/07: 52:3-22 (emphasis added).)  In light of defense counsel's

22 failure to object in a timely fashion, the fact that Defendant himself

23 agreed with the prosecution's question, and that this was a brief

24 moment in a five week trial, it does not create a substantial issue

25 for appeal.

26  H. Denial of Immunity to K.D. Mattox and Marion Yagman

27   Defendant argues that this Court should have granted immunity to

28 K.D. Mattox and Marion Yagman such that they could testify at

1  Defendant's trial without fear of prosecution. Defendant's sole

2  authority for this proposition is the dissenting opinion in United

3  States v. Paris, 827 F.2d 395, 404-06 (9th Cir. 1987) (Kozinski, J.,

4  dissenting). Controlling Ninth Circuit authority explains that

5  Defendant's position is incorrect. As stated by the Ninth Circuit

6  majority, Defendant's "argument is without merit because an accused is

7  not entitled to compel a prosecutor to grant immunity to a potential

8  witness." United States v. Shirley, 884 F.2d 1130, 1133 (9th Cir.

9  1989).

10       I.    Motion to Dismiss Count Two and Request for Jury Instruction

11             based on *Milwitt*

12       In United States v. Milwitt, 475 F.3d 1150 (9th Cir. 2007), the

13  Ninth Circuit stated the following in dicta:

14       As opposed to the historic bankruptcy crimes, as exemplified in §

15       152, which concerns acts committed in the bankruptcy context, the

16       focus of § 157 is a fraudulent scheme outside the bankruptcy

17       which uses the bankruptcy as a means of executing or concealing

18       the artifice.

19  Id. at 1155. As a result, Defendant argues that Count Two of the

20  Indictment should have been dismissed because Defendant did not allege

21  a scheme "outside" the bankruptcy that was executed "inside" of it.

22       The Court denied Defendant's motion in a written order issued on

23  May 17, 2007. [Docket No. 337.] The Court fails to see how, in light

24  of Section 157's broad language and Congress's statutory intent to

25  pattern the crime on the mail and wire fraud statutes, there could be

26  a substantial issue for appeal. But even if Milwitt presented a

27  substantial question for appeal, it cannot possibly alone lead to a

28  reversal on all counts for which Defendant has been sentenced to

1 | prison.  Count One, as well as the counts relating to money
2 | laundering, would all remain undisturbed.  Defendant has been
3 | sentenced on each of these counts to thirty-six (36) months in prison.
4 |     J.   Motion to Dismiss Count Two for Duplicity
5 |     As with the immediately preceding argument, Defendant's
6 | allegations of error with regard to duplicity within Count Two cannot
7 | alone possibly result in a reversal as to all counts of conviction for
8 | which he faces imprisonment.[6]  Additionally, Defendant's duplicity
9 | arguments have no likelihood of success on appeal.  First, Defendant
10 | asserts that two bankruptcy filings that were filed in two different
11 | district courts must necessarily represent two separate schemes to
12 | defraud.  This argument is incorrect in light of Ninth Circuit law.
13 | As stated in United States v. Mastelotto:

14 |     The central question in a duplicity review of any given count in
15 |     an indictment in a mail or wire fraud case is thus the breadth of
16 |     the fraudulent activity alleged in the count, that is, whether it
17 |     all falls within one unitary "scheme to defraud."  Since sections
18 |     1341 and 1343 themselves place no internal limitations on scope
19 |     of the term, the courts have uniformly defined the scope of a
20 |     "scheme to defraud" by reference to the intent of the alleged
21 |     defrauders.  If the set of fraudulent transactions alleged in a
22 |     count is within the conceivable contemplation of a greedy mind,
23 |     no duplicity has occurred.

24 | 717 F.2d 1238, 1244-45 (9th Cir. 1983), overruled on other grounds,
25 | United States v. Miller, 471 U.S. 130, 135-36 (1985). As Defendant has
26 | repeatedly emphasized, Section 157 is patterned after the mail and
27 |
28 | [6] The Court's duplicity analysis can be found in Docket No. 291.

17

wire fraud statutes.   There can be no doubt that Defendant's two bankruptcy filings were "within the conceivable contemplation of a greedy mind."   There is no substantial issue as to this argument.

Second, Defendant asserts that it was error to allow Count Two to proceed because three acts of execution were charged in one count. However, even if Count Two was duplicitous, any possible prejudice was remedied by the special verdict form in this case.   United States v. Ramirez-Martinez, 273 F.3d 903, 915 (9th Cir. 2001) ("[A] defendant indicted pursuant to a duplicitous indictment may be properly prosecuted and convicted if either (1) the government elects between the charges in the offending count, or (2) the court provides an instruction requiring all members of the jury to agree as to which of the distinct charges the defendant actually committed.").   The special verdict form required the jury to agree unanimously as to whether Defendant was guilty of each act of execution.[7]   The language of the special verdict form was discussed at length by the parties with the Court, and an agreement was reached on its final terms.

K.   Denial of Motion to Strike for Improper Venue

Defendant argues that this Court erred by not striking certain affirmative acts from Count One (1, 29, 31, 32, and 33) and acts of execution from Count Two (1 and 2) on the basis of improper venue. First, Defendant's venue argument would not alone result in a reversal for either Count One or Count Two, let alone the money laundering counts.   Counts One and Two only require the jury to find one act of evasion and one action of execution, respectively.   Even accepting

---

[7] The jury was also required to reach unanimous agreement as to each of the 33 affirmative acts of evasion charged in Count One.

Defendant's premise, the jury's finding would remain undisturbed as to 28 acts of evasion for Count One and one act of execution for Count Two.

And to the extent that the Court's refusal to strike these acts was improper, the jury was instructed on venue at trial. The jury was told that Defendant could not be convicted of any one of the five disputed acts of evasion or two acts of execution unless the jury unanimously agreed, by a preponderance of the evidence,[8] that a particular act was "begun, continued, or completed" in the Central District of California. See 18 U.S.C. § 3237(a). The defense did not object to this instruction. As explained in one of the Court's August 17, 2007 post-trial orders [Docket No. 473], venue is proper in this district if Defendant "orchestrated" the disputed acts from the Central District of California. United States v. Pace, 314 F.3d 344, 350 (9th Cir. 2002); see also United States v. Palomba, 31 F.3d 1456, 1461 (9th Cir. 1994) ("Because the record does not clearly demonstrate that the transmissions underlying counts 1-6 originated from, passed through, were received in, or were **orchestrated** from Northern California, these crimes were evidently not 'committed' there for venue purposes.") (emphasis added). Defendant has not provided this Court with any basis for concluding that the jury's determination was incorrect.

///

---

[8] It is unusual that the preponderance standard of proof would have any application in a criminal case. But as the Ninth Circuit has unequivocally held, "venue need be proved only by a preponderance of the evidence, and can be established either directly or circumstantially." United States v. Powell, 498 F.2d 890, 891 (9th Cir. 1974).

1 ///

2     L.   Handwriting Analysis

3     Defendant asserts that the Court's limitation on the testimony of

4 his expert witness Mark Denbeaux (Denbeaux) and the Court's refusal to

5 elicit testimony from Denbeaux at a Daubert hearing for the

6 Government's expert forensic examiner Bonne Beal raise substantial

7 questions.  At trial, Beal testified that Defendant had forged

8 Mattox's signature on the various account documents such as Mattox

9 Network Bank account opening document.  Defendant did not call an

10 expert handwriting expert, but did call Denbeaux (a law professor) who

11 testified about the unreliability of handwriting analysis generally.

12 At trial, the defense was allowed to present the fact that another

13 handwriting expert from the U.S. Postal Inspection Service had reached

14 a somewhat different conclusion than Beal.  Clearly, the jury had a

15 complete record before it.

16     As detailed in the Court's order following the Daubert hearing,

17 Beal's testimony, consisting of a handwriting analysis of various bank

18 account documents, was admissible as expert testimony based on a

19 consideration of the five factors described in United States v. Prime,

20 431 F.3d 1147 (9th Cir. 2005).  [Docket No. 367.]  Further, the Court

21 noted that this result was consistent with the determinations of all

22 seven circuits that have addressed the admissibility of handwriting

23 expert testimony. See United States v. Prime 431 F.3d 1147, 1154

24 (9th Cir. 2005); United States v. Crisp, 324 F.3d 261, 269-70 (4th

25 Cir. 2003); United States v. Mooney, 315 F.3d 54, 63 (1st Cir. 2002);

26 United States v. Jolivet, 224 F.3d 902, 906 (8th Cir. 2000); United

27 States v. Paul, 175 F.3d 906, 911 (11th Cir. 1999); United States v.

28 Jones, 107 F.3d 1147, 1161 (6th Cir. 1997) (allowing expert

1  handwriting testimony from an inspector for the Postal Inspection
2  Service Forensic Laboratory); United States v. Velasquez, 64 F.3d 844,
3  850-52 (3d Cir. 1995) (allowing expert handwriting testimony from a
4  Forensic Document Analyst for the U.S. Postal Inspection Service).
5  Additionally, the limitation on Denbeaux's testimony to his
6  observations about handwriting analysis generally, which precluded him
7  from analyzing the documents in question, does not raise a substantial
8  question because Denbeaux conceded that he was not an expert on the
9  issue of handwriting analysis.  In fact, other courts have also
10 precluded Denbeaux from testifying as an expert witness on handwriting
11 analysis.  In United States v. Paul, 175 F.3d 906, 912 (11th Cir.
12 1999), the Eleventh Circuit held that the district court did not abuse
13 its discretion in not admitting Denbeaux's rebuttal testimony on
14 handwriting analysis:

15    Denbeaux was not qualified to testify as an expert in handwriting
16    analysis because he: (1) did not possess an acceptable degree of
17    "knowledge"; (2) would not have assisted the jury; and (3) was
18    not a qualified expert. Fed. R. Evid. 702. The record reflects
19    that Denbeaux had no skill, experience, training or education in
20    the field of handwriting analysis. The record shows that Denbeaux
21    has a law degree and that he is a law professor who teaches
22    evidence. Before 1989, he reviewed the literature in the field of
23    questioned document examinations, and then coauthored a law
24    review article critical of forensic document examiners' ability
25    to reach the correct conclusion in questioned document
26    examinations. . . . His skill, experience, training and education
27    as a lawyer did not make him any more qualified to testify as an

28

21

1    expert on handwriting analysis than a lay person who read the

2    same articles.

3  <u>Id.</u>  A district court in the Southern District of New York similarly

4  excluded Denbeaux's testimony:

5       Gianni offered Mark Denbeaux, a law professor, to testify not as

6       a handwriting expert, but rather as a critic of the field of

7       handwriting analysis in general and to the weight that the Court

8       should place on Bevacqua's testimony. . . . Denbeaux himself was

9       clear that he was not a handwriting expert. (Hr'g Tr. 212:12-14

10      ("I have never said I'm a handwriting expert. I am an expert on

11      the methodology and defects of handwriting [analysis]. It is

12      quite a different thing.").) The Court, recognizing its own

13      capability of assessing the weight of Bevacqua's expert testimony

14      and thus finding that Denbeaux's testimony would not "assist the

15      trier of fact," Fed. R. Evid. 702, in determining the

16      authenticity of the signature on the Letter of Intent, found that

17      Denbeaux was not qualified to testify as an expert under Rule

18      702. (Hr'g Tr. 218:2-13, 225:11.)

19 <u>A.V. By Versace, Inc. v. Gianni Versace S.p.A.</u>, 446 F. Supp. 2d 252,

20 267-68 (S.D.N.Y. 2006).

21      Further, both Beal's and Denbeaux's testimony was not relevant to

22 all of the counts for which Defendant has been convicted.  Thus,

23 assuming *arguendo* that the limitations placed on Denbeaux's testimony

24 raised a substantial question, Defendant has nonetheless failed to

25 demonstrate that "that decision is likely to result in reversal, an

26 order for a new trial, or a sentence that does not include a term of

27 imprisonment, on *all* counts on which imprisonment has been imposed."

28 <u>Mett</u>, 41 F.3d at 1282 n.3 (citing 18 U.S.C. § 3143(b) (emphasis

1  added); <u>see</u> <u>also</u> <u>Morison</u>, 486 U.S. at 1306.  Because Defendant cannot

2  show that this issue affected <u>all</u> of the counts which result in

3  imprisonment, Defendant cannot, relying on this issue alone, meet his

4  burden regarding the fourth factor.

5       <u>M.</u>   <u>Motion to Dismiss Money Laundering Counts</u>

6       Defendant additionally argues that this Court erred by not

7  dismissing the money laundering counts based on an improper

8  interpretation of the term "prior separate criminal activity."  The

9  Court issued a detailed order rejecting this argument.  [<u>See</u> Docket

10  No. 291 at 51-57.]   Accordingly, the entire analysis will not be

11  incorporated in this Order.

12       In evaluating Defendant's contention, it is vital to recall that

13  the underlying separate criminal activity for the money laundering

14  counts is based on a violation of 18 U.S.C. § 152, not 18 U.S.C. § 157

15  or 26 U.S.C. § 7201.  Thus, it is irrelevant whether certain monetary

16  transactions are arguably connected to Defendant's tax evasion or

17  bankruptcy fraud scheme.  Under Section 152, the crime is complete at

18  the moment that Defendant has filed a false bankruptcy petition or

19  made a false oath in connection with his personal bankruptcy

20  proceeding.[9]  <u>United States v. Nunez</u>, 419 F. Supp. 2d 1258, 1272 (S.D.

21  Cal. 2005).  Thus, there can be no question that Defendant's

22  subsequent deposits and withdrawals are wholly "separate" from his

23  Section 152 crime.  The acts constituting money laundering are not the

24  same as those actions that represent the underlying <u>Section 152</u> crime.

25

26  ────────────────

[9]  By focusing on how the money laundering counts relate to the acts
27  covered in Counts One and Two, Defendant sets up a strawman argument.
Section 7201 and Section 157 crimes cannot serve as the qualifying
28  predicate act under the money laundering statutes.

1   Defendant's only other argument is that the money laundering

2   counts are defective because the crime was not "complete" until the

3   bankruptcy proceedings were discharged or otherwise ended.   "Such an

4   interpretation of completed criminal activity would have the court

5   create immunity from money laundering charges for any transaction that

6   predates the completion of an ongoing criminal offense or scheme."

7   United States v. Quan, 2006 WL 2619191, at *1 (N.D. Cal. Sept. 12,

8   2006).   The money laundering statutes evince no intent whatsoever to

9   confer such immunity upon a defendant until the scheme is fully

10  "complete."   These arguments are not "fairly doubtful."

11      N.   Sentencing Appellate Issues

12      Finally, Defendant raises certain arguments relating to his

13  sentencing, but none constitute a discernible substantial question for

14  appeal.   As explained by the Government in its opposition brief:

15      [T]he Court expressly stated that, even had it adopted

16      defendant's position with respect to calculation of the

17      Guidelines, it would have imposed the same sentence under United

18      States v. Booker, 543 U.S. 220 (2005), and 18 U.S.C. § 3553(a).

19      The Court's statement effectively moots any potential Sentencing

20      Guidelines issues on appeal.

21  (Gov't Opp. at 61.)   District courts have discretion to follow or not

22  follow the guidelines under Booker, and Defendant himself argued that

23  the guidelines only constitute a "factor" to be considered.   Defendant

24  has failed to explain how the enumerated issues - attribution of the

25  corporate tax liability debt under Count One, a two-level

26  sophisticated concealment under Count One, and the application of the

27  ///

28

1998 manual to Count Two[10] - would suffice to meet his burden as to

Section 3143(b).[11]

O.    Issues Raised in Defendant's Reply Brief

Without any explanation, Defendant offered for the first time in his reply brief three additional items as presenting a possible "substantial question" for appeal.  Defendant did not apparently believe that these issues were meritorious enough to be raised in his opening brief.  Nevertheless, the Court will analyze these claims.

1.    "Case" v. "Proceeding"

Defendant argues that this Court erred when it failed to dismiss Count Two of the Indictment.  Defendant claims without any authority that this Court incorrectly concluded that the term "case" refers to the bankruptcy petition itself, and that every action that occurs after the filing of the petition constitutes a "proceeding."  [See Docket No. 337 at 12-16.]

First, Defendant fails to explain how this issue could be deemed fairly debatable given the clear legislative history explaining how these terms are to be understood.  As stated in the legislative

---

[10] Defendant has argued that Count Two is not a "continuing offense," and that it was improper to apply the 1998 guideline to the first two acts of execution because they predate the 2001 amendment. Defendant's argument necessarily fails because if the crime is a continuing offense, then there is no dispute that the 2001 guideline would apply based on the date of the third act of execution.  On the other hand, if the offense is not "continuing," the third act of execution would independently be governed by the 2001 manual regardless, and the first two acts would essentially become relevant conduct to the sentencing.  Either way, there is no basis for applying the 1998 manual to the third act of execution described in Count Two.

[11] The Court also notes that its imposition of a thirty-six (36) month sentence falls within the 30-37 month range provided in Defendant's most favorable sentencing calculation.  See supra note 1.

1  history, "anything that occurs within a case is a proceeding." H.R.

2  Rep. No. 95-595, 445 (1977) (quoted in Collier on Bankruptcy, ¶

3  3.01[4][b], at 3-20.1); see also In re Wolverine Radio Co., 930 F.2d

4  1132, 1141 n.14 (6th Cir. 1991) ("[T]he term 'proceeding' is used to

5  refer to the steps within the 'case' and to any subaction within the

6  case that may raise a disputed or litigated matter.") (emphasis

7  added). Second, this question only relates to Count Two of the

8  Indictment, and thus would not result alone in a reversal or new trial

9  as to all counts for which Defendant has been convicted.

10        2.    Search and Disclosure of Electronic Surveillance

11      On July 17, 2007, this Court issued an order relating to

12  Defendant's motion for the search and disclosure of electronic

13  surveillance. [Docket No. 443.] Defendant argues that there is a

14  substantial question relating to: (1) whether the Government's denials

15  of electronic surveillance were sufficient; and (2) whether the

16  prosecution "was required, which was not done in this case, to make a

17  detailed and comprehensive search for electronic surveillance to

18  respond to the specific and detailed showings made by the defense."

19  (Def. Reply at 20-21.)

20      Defendant has never explained how his motion differed factually

21  from nearly identical claims rejected by the Ninth Circuit in In re

22  Grand Jury Proceedings ("Garrett"), 773 F.2d 1071, 1072-73 (9th Cir.

23  1985). Furthermore, there is no question that the Government's

24  denials were factual, unambiguous, and unequivocal. Finally,

25  Defendant is incorrect in arguing that the Government did not make a

26  "comprehensive search." The declarations submitted by the Government

27  revealed that a comprehensive search was made of the agencies that

28  ///

1  were involved in Defendant's investigation, which is sufficient under

2  controlling Ninth Circuit authority (e.g., Garrett).

3            3.   Exclusion of Professor Ken Noble's Testimony

4       Defendant also asserts that this Court should not have excluded

5  the testimony of Ken Noble as either: (1) "substantive evidence"; or

6  (2) "a prior consistent statement." (Def. Reply at 21.)  At the

7  trial, the Court was provided with a copy of a declaration signed by

8  Ken Noble in 2005. [Docket No. 410.]  This declaration functioned as

9  an offer of proof of Noble's purported testimony.  In Paragraph Six,

10  Mr. Noble says he asked Defendant in 1999 why his relatives wanted him

11  to invest such a large amount of money on their behalf.  Defendant

12  reportedly replied that "they were elderly people who did not have

13  much experience with investments.  He said that they had worked in the

14  public sector and had put their money into Treasury Bills which paid a

15  very poor rate of return.  They asked Stephen to take charge of their

16  investments because he was close to them and they trusted him."

17       Defendant states in his reply brief that Professor Noble's

18  testimony should have been admitted as "substantive evidence."  While

19  Defendant does not define this term, he undoubtedly sought to admit

20  this testimony to prove the truth of the matter asserted, which

21  qualifies it as hearsay.  In his briefing, Defendant has referenced

22  the testimony of Lloyd Cymrot, which was admitted at trial under the

23  state of mind exception codified at Fed. R. Evid. 803(3).  However, it

24  must be noted that Defendant's conversations with Mr. Cymrot, which

25  concerned the same subject as Professor Noble's proposed testimony,

26  predated his investments of the relatives' money.  As a result,

27  Defendant's conversation with Mr. Cymrot on this subject amounted to a

28  statement of his present intent to perform certain future acts with

1   regard to that money.   In contrast, by the time of Professor Noble's

2   1999 conversation with Defendant, the investments had already begun.

3   Consequently, Defendant's statements to Professor Noble did not

4   reflect future conduct.

5        Additionally, Defendant's claim that Professor Noble's testimony

6   should have been admitted as a prior consistent statement under Fed.

7   R. Evid. 801(d)(1)(B) is not likely to result in a reversal.   This

8   Court found that Defendant had a motive to fabricate as of 1999.[12]

9        Professor Noble's testimony was also cumulative of Mr. Cymrot's

10  testimony.   Defendant disagrees, largely based on his claim that the

11  Government attempted to impeach Mr. Cymrot.   However, as this Court

12  recalls, the Government's efforts to show Mr. Cymrot's bias or motive

13  were quite minimal.   And to the extent that Mr. Cymrot was impeached

14  due to his relationship with Defendant, the same would have assuredly

15  occurred as to Professor Noble.   (Noble Decl. ¶ 3 ("A friendship

16  quickly developed and we have kept in close touch over the past 10

17  years.").)   Finally, evidence relating to the relatives' money did not

18  impact all counts for which Defendant has been sentenced and so would

19  not result alone in a reversal or new trial as to all counts.[13]

20  _____

21  [12] In addition to allowing Mr. Cymrot to corroborate the Defendant's
    testimony, the Court also allowed Denise Woodbury, pursuant to a
22  hearsay exception, to bolster Defendant's testimony regarding the gift
    of the house.
23

24  [13] Whether the relatives' money became the Defendant's or whether he
    controlled it was irrelevant to his bankruptcy fraud conviction (Count
25  Two) since the bankruptcy petition (question #14) required Defendant
    to list assets he controlled.   Moreover, even if the jury found that
26  he controlled but did not acquire the relatives' money, it was only
    related to one aspect of Count One.   Through the special verdict form,
27  the jury found that Defendant committed many other acts in support of
    the tax count.   Moreover, this issue does not affect the money
28  laundering counts.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's motion for bail pending appeal pursuant to 18 U.S.C. § 3143(b) is DENIED.  Defendant has not shown that there is a substantial question of law or fact, which if determined favorably on appeal, would likely result in reversal, an order for a new trial, or a sentence that does not include a term of imprisonment, on **all counts** on which his thirty-six (36) month term of imprisonment has been imposed.

IT IS SO ORDERED.


DATED: _January 2, 2007_                    _____

                                            STEPHEN V. WILSON
                                            UNITED STATES DISTRICT JUDGE